Petitioner Hector Gonzalez-Rivas The facts in this case are undisputed. Mr. Gonzalez-Rivas was a father, was an involved father in his family. The courts, both the immigration judge and the court of appeals, recognized that his absence would cause that family to suffer. And in the immigration court's decision, there was no analysis as to why that didn't meet a standard of exceptional, extremely unusual hardship. In the board's decision, they also lamented that his absence would cause difficulties to the family, and then went on to hold that neither Pilch nor Andazola supported hardship. But the problem is that that's not what Pilch stands for, and that's not a correct quote for Andazola. Pilch talks about two parents leaving the United States, and they reference IGE for the standard that says, if two parents leaving the United States leave their children behind, that's on them. But there is no discussion about a single parent. And in Andazola, they want to talk about how Andazola discussed the single father being left behind, or the father being behind and everything would be okay. But when you read Andazola, Andazola was presented as a single parent. In fact, it's clear that the court on 324, not 323, argues or has argued before that she argues as a single mother. She comes to the immigration judge saying, I'm a single mom, but yes, I do live with their father. So in Andazola, there was no analysis of the father or the parental role in that family. So the court's reliance on Andazola is misplaced. So now we're left with a legal test of exceptional, extremely unusual hardship, and we have all of this information plus the current data that we provided to the court in our briefing on the hardships of families when parents are taken away from them, and that's not properly analyzed by any court. And so we come to you with Las Padillas in one hand and Patel not dissuading us, and we say there needs to be a legal standard to determine what is the hardship to a family where you sever an intact family, you rip out one of the parents, and you send them out of the United States. If you're going to take a parent out of a family anywhere in the United States, you have to show that that is not in the best interest of a child and that that parent is unfit, and that does not occur in immigration court. We just decide. If that's the standard, what person who's not an absolute threat to the people of the United States is ever going to be deported if they're the parent of a child? Because if you're sitting there focusing on the interest of the child, isn't that child an anchor into the United States until the end of time? No. Or until they reach 18? Not at all. Why not? How has the child ever benefited by the removal of a parent who's interested in their lives? How is that ever the best interest of the child? Say, take that kid and leave him alone. Remove that parent. How is that ever? I mean, that seems to me an utterly unworkable argument. And if I may, Judge Erickson, how about an alcoholic parent or a parent that's not involved or a child who lives out of the United States? All of those factors could be a parent who shows up on video. For example, Monreal. Monreal, the seminal case in cancellation of removal. Monreal is a reunification case. When you look at the facts of Monreal, you have a father in the United States who cares deeply about his children, but his wife and other child are in Mexico. That's a reunification case. A father who has an alcohol problem, or a mother, and my apologies, I don't mean to be sexist or genderless. This can go either way, mothers or fathers. Who is uninvolved. I've had cases where they have found hardship to the children but have declined in their discretion to grant a case because there is so much going on with the character of that parent. It isn't in that child's best interest. A father or mother who is a paycheck parent, who really, they have children, they live with the other parent, and they give them money. Is that parent really involved? Is there really in the best interest of that child? I'm not sure the money is there, but is that really in the best interest of that child to have that person around because they're not involved? So now you have this mystery of this person and this child growing up with, why does not my parent come involve with me? There are a number of situations that could be analyzed and are analyzed in the courts of the states on a daily basis about that, and they would be applicable in this sense. So you would not have every child that is born in the United States be an instant anchor. We could have a seminal debate among theorists or psychologists as to, dare we re-approach the Tinder years doctrine, but does an infant have the same issues as someone else? If an infant grows up in a strong single-parent household, are they as likely to re-offend as someone who is at 13 having their parent taken away from them? So yes, Judge Erickson, I believe there are a number of issues that could be here, and not every child would be an anchor. Have I addressed your question? You did. I'm just not sure. I mean, listen, I was a family court judge for a decade until I made these decisions on the best interest of the child. I'm still having a hard time. I get where the person's a criminal, an alcoholic, and a drug addict, that you may say the best interests of the child are advanced by removal. I find it hard to believe that any other circumstance, and that's what I meant when I said, well, you say a terrible person is a threat to the people of the United States, and I think that by definition, alcoholics and drug addicts are. They're criminals, and they pose a threat. But I think that you really are setting up a standard that is easily attainable by a parent. And if I may, we're not just talking about a parent. We're talking about someone who's been here for 10 years, who has passed an ever-increasingly tight standard of good moral character, who is not barred by criminal behavior. So the question becomes, then, if they also are raising a child or involved in a child's life, are they not someone that deserves to remain? Have they not, to be a colloquial term, paid their dues and are not due some consideration to say you have passed the test? Consider temporary protective status, a filter that occurs every 18 months where they have no criminal history, they have to reapply, and they get a work permit, and they're working. You've filtered out all of the undesirables, those kinds of whatever terminology you wish to use. In this case, it is also a filter. You must pass through the three steps to begin with. Now we get to the hardship. What is your relationship? Are your children doing well? Are they just going to be good citizens? Maybe they're not going to be rocket scientists, but maybe they're just good people. You've raised good children. Isn't there an equitable consideration that should be given? And shouldn't we have a legal standard that addresses that? That is the greater issue here, is we don't. There isn't one. To call the court's attention as we follow this thread of Andazol and Pilch and IGE, which is a name and I can't pronounce it, so I refer to it as IGE, so my apologies to the court. We have Calderon-Hernandez, which is the follow-up to IGE, in which the IJ said you are leaving, but you're leaving your children behind, but you didn't give me a written plan, so I'm not going to consider that you're leaving your children behind. The board remanded that because they wanted to see the difference. Now they make the analysis of what is a parent leaving a child behind, because they said the IGE standard didn't apply, and so they remanded for a single parent standard. Why? Because they don't have a standard for removing a parent from the family. I'm into my rebuttal time, if I may reserve the remainder. Thank you. Mr. Kelch. Good morning. May it please the Court, my name is Greg Kelch, and I represent the United States Attorney General. Your Honors, this Court has held since the Maraz-Rayas that the exceptional and extremely unusual hardship determination is a discretionary determination that's barred from judicial review under 1252A2B1 and not a question of law for review under 1252A2D. And that line of precedent has only been strengthened by the Supreme Court's recent decision in Patel v. Garland. As Patel explains to us, when Congress enacted 1252A2B1, their intention was to shield any judgment regarding the granting of relief from judicial review, and that includes the eligibility determination, which, as in this case, would go to exceptional and extremely unusual hardship. Patel also explains to us that when Congress in 2005 added 1252A2D into the immigration statute, it was only acting in a limited fashion to address the suspension clause concerns that were raised in INS v. St. Cyr. The suspension clause does not provide for review of discretionary determinations. What petitioners are trying to do here is to turn this statute on its head. They're taking what was a matter of administrative grace, and they're trying to turn this into an entitlement where they would come before this Court and argue, well, they have demonstrated these hardship factors, and you should determine that it's exceptional and extremely unusual hardship. And you're simply barred from doing that under 1252A2B1. And I want to make two more points on this. First, let's look at the history of this statute. The prior version of this statute was suspension of deportation, and that provided relief for people who demonstrate extreme hardship in the opinion of the Attorney General. We all understood that with that phrase, in the opinion of the Attorney General, it was an unreviewable discretionary determination. In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act, and that statute is generally recognized as a tough-on illegal immigration statute. What Congress did was they replaced suspension with cancellation, they increased the continuous physical presence requirement from 7 to 10 years, they added a provision to bar certain criminals, they raised the hardship standard to exceptional and extremely unusual, and then they enacted 1252A2B1 that said that any judgment regarding this would not be subject to judicial review. There's nothing in that scenario that suggests that Congress was trying to make it easier or that they wanted the courts to be more involved in cancellation or removal. And then the other point that I want to make is I encourage the court to look at the language that Congress used. They said exceptional and extremely unusual. And what those words naturally mean is that there are a lot of families who are going to experience exceptional hardship, but they won't get relief because their cases aren't extremely unusual. That's a very unusual thing for Congress to do, and it suggests that, indicates that, this was meant to be the Attorney General's judgment call. Who gets it and who does not is an issue for the Attorney General to decide and not for the courts. The petitioner's points about the hardships to his family are well taken by the government. I want to assure that to the court. These cases, everyone are unique, and everyone is important. But as we noted in our brief, it's not extremely unusual. As Judge Erickson points out, there are a lot of families where mothers and fathers are living together, they're involved in their children's lives, and they receive a removal order. That's going to present a hardship, whether it's that the family is all going to move to Guatemala, where he lives, whether they might relocate to Mexico, where she has nationality, whether the children stay behind with the mother while the father is deported. Any of those situations, we understand, is going to impose an exceptional hardship to this family. But it's not extremely unusual, and it's appropriate for the BIA to make a determination that they simply did not meet these heightened standards that Congress gave them in the ERIRA. And again, we assert that this is not a matter subject to the court's review. Well, you say that, but are there really any facts in dispute here? Well, in the hearing, there was a dispute about whether the son, Hector, was going to be going to community college and whether he was going to be able to afford that if his father wasn't there. That seemed to have been a dispute. The immigration judge held that that would not be a hardship for Hector to fund his own education. Also, Mrs. Rivas Solis testified that the family was going to follow her husband to Guatemala, but the petitioner, he testified that the family was going to stay behind. It would appear that at this stage of the litigation, the petitioner is accepting all of the facts that the agency found in its decision. Okay. So no one is asking this court to review findings of fact, it seems to me. What we're being asked to do is to determine whether, as a matter of law, a set of facts would constitute this exceptional and extremely unusual hardship situation. So I don't understand what this argument about no jurisdiction, where that's coming from, or what that's based on. Well, because if the court... It seems to me we're not being asked to review findings of fact. We're being asked to make a legal determination. Review a question of law. Well, the problem with that reading is that, first of all, as this court explained in Sheriff V. Barr, every case involves the application of some facts to some law. So if you read the limited review provision that expansively, you eventually write 1252A2B1 out of the statute. And again, I'm going back to the history of the statute and to the language that Congress has used. It's Congress that gets to decide whether something will be left to the judgment of the Attorney General. I mean, they can create a discretionary benefit like cancellation and say, we're going to leave it up to the Attorney General to decide whether you get this or not. And you only will get it if it's exceptional and extremely unusual hardship. And through the statute, when we went from suspension to cancellation and arrear from the language that they used, and from this court's binding precedent, you've already held, after the enactment of 1252A2D, that exceptional and extremely unusual hardship is not a question of law. And this panel is bound by that precedent. This is a discretionary determination. Congress did not set this up to be a question of law. When we added 1252A2D into the immigration statute, that was only... What about Kasem against Barr, where we state that whether a hardship is exceptional and extremely unusual is a question of law? Well, I've cited another... Excuse me, what is the case that you're referring to, Your Honor? Kasem against Barr. Kasem? 2020. Well, Your Honor, as we've cited in our briefs, you've held in Meraz, Reyes, and Campos, Hulio, that this delaying of factors is a discretionary determination that's barred from review under 1252A2B1. And again, we would go back to the point that we're making. If you're reading the limited review provision this expansively, you're essentially writing A2B1 out of the statute, and you're converting what started off as a matter of administrative grace into an entitlement for the parties to seek review before this court. And for those reasons, if the court has no further questions, I will conclude by asking that the court dismiss this petition for review. Thank you, Mr. Kelch. It is a legal review. It is a legal standard. It isn't just discretionary to find the hardship to the standard. We have a legal standard of exceptional, extremely unusual hardship. We put on a trial, and we have facts. And then the court should weigh and balance those against that legal standard. Unfortunately, there isn't one for removing a single parent from an intact family. And I use that language because, as Judge Erickson pointed out, there are a number of scenarios. But in this case, with these facts that we are not disputing, this is an intact family where this parent was participating. The child is going to school. The other child has a skin disease. He goes to work. He is the caregiver. The head of the household was part of the testimony. It is in the record. In that sense, those are clear facts. The standard is exceptional, extremely unusual hardship. But yet, when we turn to the court, when we turn to the board, there isn't a clear standard for removing a single parent from a family. We'd ask that it be remanded so that we can begin that analysis. I believe that best interest of the child is at play. It is a universal and widely understood standard that could be easily applied. And finally, to counsel's point about exceptional and extremely unusual, I don't know that there's anything more unusual than taking a parent from an intact family. I can't think of anything that is more unusual than doing that, especially when you consider the level of proof required in the state law to do that. That truly is exceptional and extremely unusual. We would ask that you grant the petition for review. Thank you for your time. Thank you, counsel. We appreciate both of your appearance today and arguments. The case is submitted, and we will issue an opinion in due course.